IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| ANTONIO FUTCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:23-cv-02798-TLP-atc |
| v. | ) | |
| | ) | JURY DEMAND |
| FREEDOM PREPARATORY ACADEMY, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

### ORDER ON SUMMARY JUDGMENT

---

In December 2023, Plaintiff Antonio Futch sued Defendant Freedom Preparatory

Academy, Inc. ("FPA") for violating the Family Medical Leave Act, 29 U.S.C. § 2601 et seq.

("FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), and the

Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. ("Rehabilitation Act").  (ECF No. 1.)

Defendant moved for summary judgment.  (ECF No. 18.)  And Plaintiff opposed the motion.

(ECF No. 19.)  Defendant replied.  (ECF No. 20.)  For the reasons below, the Court **DENIES** the

motion on the FMLA claims but **GRANTS** the motion on the ADA and Rehabilitation Act

claims.

### BACKGROUND

Plaintiff Antonio Futch had two daughters, M and E.  (ECF No. 18-3 at PageID 79.)  He

had sole custody of E, but he shared custody of M, who was disabled,[1] with his ex-wife.  (ECF

---

[1] M had various health conditions, including panhypopituitarism and diabetes insipidus, which made her unable to care for herself.  (ECF No. 18-3 at PageID 80.)  In fact, M needed around-

No. 18-3 at PageID 80–83.)  M lived with Plaintiff "off and on," though the schedule varied. (ECF No. 18-3 at PageID 81–83; ECF No. 19-2 at PageID 246.)

Plaintiff has a master's degree in education[2] and began working at FPA as a sixth-grade social studies teacher in July 2018.  (ECF No. 18-3 at PageID 87, 89; ECF No. 19-2 at PageID 235.)  He was about halfway into his fourth year of teaching at FPA when Plaintiff began missing work often.  From October 2021 to February 2022, Plaintiff was repeatedly absent for his own physical and mental health conditions and to care for one or both daughters.  (*See generally* ECF No. 18-3.)  For example, Plaintiff missed work at least twice in October to care for E or to personally recover from Covid.[3]  (ECF No. 18-3 at PageID 91–93.)  And in December, Plaintiff missed work for another undisputed 5 days to "take care of my daughter," care for his own illness, and for a third reason on which the Parties cannot agree.[4]  (ECF No. 18-3 at PageID 94–100.)

In January, his absences increased, totaling more than 10 days.  First, Plaintiff was gone for part of January 7.  (ECF No. 18-3 at PageID 101.)  And from January 10th through the 13th,

---

[2] the-clock care.  (*Id.* at PageID 80–81.)  M passed away on February 15, 2022.  (*Id.* at PageID 80.)

[2] The degree may be in teaching or education.  (ECF No. 19-2 at PageID 235.)

[3] On October 4 and 5, 2021, Plaintiff took time off to care for one of his daughters, which was likely E.  (ECF No. 18-3 at PageID 91–93 (explaining that he did not remember which daughter was sick but that, if he "said complaining, then it's probably E, as M probably wouldn't have verbally told me she had a sore throat").)  And near the end of October, Plaintiff had a positive Covid test and "assum[es]" that he did not go to work with Covid but does not state whether he was absent.  (ECF No. 18-3 at PageID 93.)

[4] According to the Statements of Undisputed Fact, FPA believes Plaintiff missed work on Friday, December 3, 2021, to attend a Three 6 Mafia concert in Los Angeles, California.  (ECF No. 18-2 at PageID 64; ECF No. 18-3 at PageID 96.)  Plaintiff does not dispute that he was absent that day but challenges whether the concert or his daughter E's sickness caused this absence.  (*See* ECF No. 19-1 at PageID 210.)  The Parties also cannot agree as to whether Plaintiff attended work on December 9 or 10.  FPA suggests its records show absences, but Plaintiff says he would not be gone without having sent an email about it.  (ECF No. 18-3 at PageID 100.)  In any event, they do agree he was gone on December 2, 3, 6, 7, and 8.  (ECF No. 18-3 at PageID 97, 99.)

he took sick leave.[5]  (ECF No. 18-3 at PageID 147–51; ECF No. 18-6 at PageID 181.)  Plaintiff

also took time off for his mental health from January 24th through the 26th, 2022.  (ECF No. 18-

3 at PageID 107–08.)  He did not return to school before FPA fired him on February 2, missing

three more days in January and two in February.[6]  (ECF No. 18-6 at PageID 181.)

On January 26, Plaintiff emailed Jasmine Howard, Head of School, to tell her that he

needed to "relinquish his title as Grade Chair.  Currently there are several factors that are

preventing me from being physically in the building.  I will request leave under FMLA.  If you

can assist me in any way with the process, it would be appreciated."  (ECF No. 18-3 at PageID

160.)  That same day, he also emailed Amanda Harless, Director of Special Projects at FPA.  He

stated, "I would like to request FMLA leave as well as any information on the process and

requirements."  (ECF No. 18-3 at PageID 162.)  Both Howard and Harless connected Plaintiff

with Valerie Nering, FPA's human resources director.  (*See* ECF No. 18-3 at PageID 160–62.)

That evening, Howard also contacted Nering for "support" and to "give more details on

what[']s happening with" Plaintiff.  (ECF No. 18-4 at PageID 173.)  Two days later, on January

28, Nering told Howard that she "attempted to connect with [Plaintiff] to explain that you cannot

request FMLA Leave but it is a period that is applied for and approved in conjunction with a

medical need by a certified doctor."  (ECF No. 18-4 at PageID 174.)  And then she

"recommend[ed]," based on her conversation with Howard, "that you try and coordinate with

him to return to the building to meet and at that time collect his devices and end his employment

---

[5] Part of these days related to a car accident for which Plaintiff sought medical treatment.  (ECF
No. 18-3 at PageID 147–48.)  The rest was to care for daughter E, who had been exposed to
Covid and could not return to school.  (ECF No. 18-3 at PageID 148–49.)
[6] The record is unclear as to why Plaintiff missed work on January 27, 28, and 31, and on
February 1 and 2 (ECF No. 18-3 at PageID 119, 131–32), but both parties agree he did not come
in to teach (ECF No. 19-1 at PageID 221).

with FPA." (ECF No. 18-4 at PageID 174.) As a result, Howard contacted Plaintiff on February 1 to ask him to come in for a meeting. (ECF No. 19-13 at PageID 313.) He stated that he could not meet in person but that he could talk by phone, and they agreed to a call the next morning. (ECF No. 19-13 at PageID 313.)

In the meantime, on February 1, Plaintiff emailed Nering to ask if there was "any additional information that [she] could share regarding the FMLA request and process" because he had "yet to receive any information." (ECF No. 18-3 at PageID 164.) She stated that the human resources business partner assigned to FPA would contact him. (ECF No. 18-3 at PageID 164.) And that same afternoon, Simone Jackson responded to his inquiry, explaining that she "tried calling . . . multiple times with no answer" and that he needed to submit "the attached FMLA form that should be filled out by a certified doctor." (ECF No. 18-3 at PageID 164 (email thread); ECF No. 18-3 at PageID 166–69 (Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act) form).) She also requested Plaintiff's "expected return date from [his] doctor's office." (ECF No. 18-3 at PageID 164.) Plaintiff responded the next morning and confirmed that he would "consult with [his] provider" but did not provide a timeline on when he would return the requested form.[7] (ECF No. 18-3 at PageID 164.)

Plaintiff later got on his scheduled call with Howard. She fired him, stating that she "needed someone who was going to be available to be at work." (ECF No. 18-3 at PageID 105–

---

[7] Plaintiff ultimately met with his provider who filled out the requested form. The form, dated March 9, 2022, "estimate[d] the beginning and ending dates for the period of incapacity" to care for M as being from January 24, 2022, through March 30, 2022. (ECF No. 18-3 at PageID 166–69.) Of course, M had passed almost one month before Plaintiff's doctor signed the form (*see* ECF No. 18-3 at PageID 80), so it is somewhat unclear the basis for her estimated "period of incapacity."

06.)  And Plaintiff then received his final termination letter, dated February 2, 2022.  (ECF No.
18-3 at PageID 121–22.)

Plaintiff filed an EEOC charge for employment discrimination in December 2022.  (*See*
ECF No. 18-8 at PageID 186.)  And after receiving his right to sue letter, he brought this case on
December 21, 2023.  (*See* ECF No. 1.)  Plaintiff now alleges interference and retaliation under
the FMLA and associational discrimination under the ADA and Rehabilitation Act.  (*See
generally* ECF No. 1.)  And Defendant has moved for summary judgment on each of his claims.
(*See* ECF No. 18.)  The Court will first set out the standard of review and then address
Defendant's motion.

## STANDARD OF REVIEW

Courts grant summary judgment only when, viewing the evidence in the light most
favorable to the nonmoving party, "there is no genuine dispute as to any material fact" and the
moving party "is entitled to judgment as a matter of law."  *Render v. FCA US, LLC*, 53 F.4th
905, 913–14 (6th Cir. 2022) (quoting Fed. R. Civ. P. 56(a); *Kirilenko-Ison v. Bd. of Educ. of
Danville Indep. Schs*, 974 F.3d 652, 660 (6th Cir. 2020)).  "A dispute of a material fact is
genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-
moving party.'"  *Kirilenko-Ison*, 974 F.3d at 660.  And a party must support its claim that there
are, or are not, genuine disputes of material fact by citing to evidence in the record.  Fed. R. Civ.
P. 56(c)(1)(A).

## ANALYSIS

Plaintiff brings claims under the FMLA and under the ADA and Rehabilitation Act.  The
Court will first discuss the FMLA claims for interference and retaliation before turning to the
associational discrimination claims under the other statutes.

I.    **FMLA**

The FMLA entitles eligible employees "to a total of 12 work weeks of leave during any 12-month period" for "a serious health condition that makes the employee unable to perform the functions of [his] position." *Render v. FCA US, LLC*, 53 F.4th 905, 913–14 (6th Cir. 2022) (quoting 29 U.S.C. § 2612(a)(1)(D)). The FMLA also applies to employees who are unable to work "[i]n order to care for [a] spouse, or a son, daughter or parent . . . if such spouse, son, daughter or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). And the FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition" that involves inpatient hospital care or continuing treatment. 29 U.S.C. § 2611(11).

An employer must "restore[]" any employee approved for FMLA leave "to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1). And taking FMLA leave "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." 29 U.S.C. § 2614(a)(2).

The Sixth Circuit "recognizes two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)."[8] *Render*, 53 F.4th at 914. "[B]ecause employers can terminate employees for many reasons—only some of which amount to FMLA" violations—plaintiffs often rely on circumstantial evidence to support claims under these theories. *Render*, 53 F.4th at 919. And in such cases, courts analyze the claims under the *McDonnell Douglas* burden-shifting framework. *See Demyanovich*, 747 F.3d at 427–

---

[8] The Sixth Circuit has "recognized" that "a retaliation claim may also be cognizable under § 2615(a)(1)," *Milman*, 58 F.4th at 866, but neither party argues that Plaintiff's retaliation claim arises under (a)(1). (*See* ECF No. 18; ECF No. 19 at PageID 199.)

32 (applying the analysis to interference claims); *Render*, 53 F.4th at 920 (applying the analysis

to a retaliation claim); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting

out a burden-shifting test).  Under *McDonnell Douglas*, a plaintiff first must make a prima facie

showing of interference or retaliation.  *Render*, 53 F.4th at 920.  If he does so, the burden shifts

to the defendant to give a non-discriminatory reason for its decision.  *Id.*  If the defendant meets

this burden, the plaintiff then must show the proffered reason is pretextual.  *Id.*  Plaintiff asserts

claims under both theories here, and the Court analyzes them under *McDonnell Douglas*.

## A.    Prima Facie

### 1.    Interference

Under the interference theory of § 2615(a)(1), an employer is liable if it "interfere[s]

with, restrain[s], or den[ies] the exercise of or the attempt to exercise, any right provided under

this subchapter."  29 U.S.C. § 2615(a)(1).  This includes interfering "with an employee's rights

under the law, and with . . . *inquiries relating to an employee's rights*."  *Milman v. Fieger &*

*Fieger, P.C.*, 58 F.4th 860, 870 (6th Cir. 2023) (quoting 29 C.F.R. § 825.220(a)).

To prove FMLA interference, a plaintiff must show that

(1) he was an eligible employee as defined under the FMLA; (2) his employer was
a covered employer as defined under the FMLA; (3) he was entitled to leave under
the FMLA; (4) he gave the employer notice of his intention to take FMLA leave;
and (5) his employer denied FMLA benefits to which he was entitled.

*Dyer v. Ventra Sandusky, LLC*, 934 F.3d 472, 475 (6th Cir. 2019) (citing *Demyanovich v. Cadon*

*Plating & Coatings, L.L.C.*, 747 F.3d 419, 427 (6th Cir. 2014)).

The regulations for FMLA further define the notice requirements of the fourth element of

an interference claim.  By regulation,

[a]n employee giving notice of the need for FMLA leave does not need to expressly
assert rights under the Act or even mention the FMLA to meet his or her obligation
to provide notice, though the employee would need to state a qualifying reason for

the needed leave and otherwise satisfy the notice requirements set forth in §
825.302 or § 825.303 depending on whether the need for leave is foreseeable or
unforeseeable. An employee giving notice of the need for FMLA leave must
explain the reasons for the needed leave so as to allow the employer to determine
whether the leave qualifies under the Act. If the employee fails to explain the
reasons, leave may be denied. . . .

29 C.F.R. § 825.301(b). This notice should be "at least verbal" and should "make the employer

aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration

of the leave." 29 C.F.R. §§ 825.302(c); *see also* 825.303(b) (not imposing a written requirement

and only requiring an employee to "provide," "reference," or "respond").[9]

Once the employee complies with this notice requirement, the employer then has the

responsibility to facilitate leave. *See Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 865 (6th

Cir. 2023) ("The framework contemplates an interactive dialogue between the employee and the

employer, starting with an employee's formal request for leave . . . ."). At this stage, the

employer "bears the obligation to collect any additional information necessary to make the leave

comply with the requirements of the FMLA." *Id.* at 872 (quoting *Hammon v. DHL Airways,*

*Inc.*, 165 F.3d 441, 450 (6th Cir. 1999)). And when "the employer does not have sufficient

information about the reason for an employee's use of leave, the employer should inquire further

of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying."

29 C.F.R. § 825.301(a).

---

[9] Section 825.302 applies to foreseeable leave, and § 825.303 applies to unforeseeable leave. *See*
*also Render*, 53 F.4th at 915 (explaining how to characterize leave). The parties do not clarify
whether they consider Plaintiff's requested leave to be foreseeable or unforeseeable. (*See*
*generally* ECF Nos. 18-1, 19.) In fact, Plaintiff cites the regulations governing both. (*See* ECF
No. 19 at PageID 200.) Because it appears that neither regulation requires more than verbal
notice, however, the Court does not decide the issue for now. *Compare* 29 C.F.R. § 825.302(c)
*with* § 825.303(b).

FPA contends that Plaintiff failed to "explain the reasons for the needed leave" so it could "determine whether the leave qualifies under the Act." 29 C.F.R. § 825.301(b). (ECF No. 18-1 at PageID 50–55.) And Plaintiff counters that he was not given time to comply with the FMLA. (*See* ECF No. 19 at PageID 200–01.) He also argues that he gave FPA notice of his intent and entitlement to use FMLA leave or, at minimum, has raised a question of fact on the issue. (*Id.*) Considering Plaintiff's deposition testimony, email correspondence with FPA, and his leave history in the light most favorable to him, the Court agrees that there are questions of fact about whether he met his notice requirements or was prevented from doing so. *See* Fed. R. Civ. P. 56(a); *Render v. FCA US, LLC*, 53 F.4th 905, 913–14 (6th Cir. 2022). The Court will therefore begin its analysis with Plaintiff's inquiries about the FMLA and his opportunity to give notice before addressing whether he met the regulatory notice requirements.

### a.    Alleged Interference with Plaintiff's Inquiry or Notice

Defendant argues that Plaintiff failed to give notice of the basis for his FMLA leave request and, as a result, cannot show interference. (ECF No. 18-1 at PageID 50–55.) But a reasonable jury could find that FPA interfered with Plaintiff's ability to find out about his rights or to give notice, making summary judgment improper.

An employer cannot "interfere" with an employee's ability to "exercise," or "attempt to exercise," FMLA rights. *See* 29 U.S.C. § 2615(a)(1) (making it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title"). And asking about or requesting leave under the statute are "right[s] provided" through the FMLA. *See Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 870 (6th Cir. 2023) (prohibiting an employer from interfering "with an employee's rights under the law, and with . . . *inquiries relating to an employee's rights*" (quoting 29 C.F.R. § 825.220(a))).

There is a factual dispute here about whether FPA interfered with Plaintiff's attempt to request information about leave under the FMLA. FPA argues that it did not interfere because Plaintiff was so unclear about why he was taking leave that it could not figure out whether he was eligible. It may also assert that he had missed so much work that he sensed he would be fired and mentioned FMLA to delay the inevitable.

That said, Plaintiff expressly asked for information about the FMLA process three separate times. (ECF No. 18-3 at PageID 160 (January 26 to Ms. Howard: "I will request leave under FMLA. If you can assist me in any way with the process, it would be appreciated."); ECF No. 18-3 at PageID 162 (January 26 to Ms. Harless: "I would like to request FMLA leave as well as any information on the process and requirements."); ECF No. 18-3 at PageID 164 (February 1 to Ms. Nering: asking if there was "any additional information that [Nering] could share regarding the FMLA request and process" because he had heard nothing.).) On January 28, before FPA responded to Plaintiff's questions, Ms. Howard and Ms. Nering talked about the situation, and Nering recommended terminating Plaintiff's employment. (*See* ECF No. 18-4 at PageID 174.) And then, when FPA did respond on February 1, it sent Plaintiff an FMLA medical form and told him to get it filled out by a "certified doctor." (ECF No. 18-3 at PageID 164.) But the next day, Plaintiff met with Ms. Howard who told him he was fired. Arguably, FPA failed to give Plaintiff enough time to get the form certified before it fired him on February 2. *See also* 29 C.F.R. § 825.305(b) ("The employee must provide the requested certification to the employer within 15 calendar days after the employe's request, unless . . . the employer provides more than 15 calendar days to return the requested certification.").

The FMLA does not allow an employer to prevent its employee from giving notice under 29 C.F.R. § 825.301 by firing him and then use his failure to give notice as its defense. *See*

*Milman*, 58 F.4th at 869–871 (explaining that asking about and requesting leave, even when not qualified for it, is protected); 29 U.S.C. § 2615(a)(1) (disallowing employers to "interfere" with an employee's "attempt" to take FMLA leave).  With that in mind, given Plaintiff's repeated requests to find out how to obtain FMLA leave, there remain questions of fact about whether FPA fired him because of these questions and before he had a chance to comply with the regulatory notice requirements.  (*See* ECF No. 18-3 at PageID 160–62, 164.)  And so, summary judgment is improper here.  *See* Fed. R. Civ. P. 56.

### b.    Notice under the FMLA

Aside from the question of whether FPA interfered with Plaintiff's attempt to request leave, there remains another question of fact here.  That is whether Plaintiff complied with the FMLA's notice provisions.  Under the FMLA "framework," an employee must first provide notice to the employer "explain[ing] the reasons for the needed leave" so the employer can "determine whether the leave qualifies under the Act."  29 C.F.R. § 825.301(b); *see Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 865 (6th Cir. 2023) ("The framework contemplates an interactive dialogue between the employee and the employer, starting with an employee's formal request for leave . . . .").  If the employee meets this requirement, then the employer's responsibilities arise.  *See* 29 C.F.R. § 825.301(a) ("[W]here the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying."); *see also Milman*, 58 F.4th at 872 (noting that the employee's notice triggers the employer's obligations).

The Court finds that a reasonable jury could find that Plaintiff gave the notice required under 29 C.F.R. § 825.301(b). Plaintiff sent three emails to FPA expressly citing the FMLA.[10] (ECF No. 18-3 at PageID 160–62, 164.) True enough, other than referring to the FMLA, these emails failed to state the basis for his leave request. But, according to the regulations, verbal notice may be enough. 29 C.F.R. §§ 825.302(c), 825.303(b) (allowing employee to provide verbal notice). Plaintiff testified that he had discussed M's care needs with Howard around this time, too.[11] (ECF No. 18-3 at PageID 129 (Plaintiff testifying that he told Howard that he "need[ed] time off to take care of [his] daughter").) Moreover, after Nering talked to Howard about "what[']s happening with" Plaintiff, Jackson sent Plaintiff a doctor certification form and told him to have a "certified doctor" fill it out. (ECF No. 19-10 at PageID 305 (Howard emailing Nering on January 26 about Plaintiff's situation); ECF No. 19-11 at PageID 307 (Jackson sending Plaintiff a doctor's certification form on February 1).) Jackson's email to Plaintiff suggests that FPA may have known more about Plaintiff's FMLA request and its potential to qualify for FMLA leave. Why else would FPA request that a doctor certify the employee's medical condition if it had no basis for believing the employee could qualify for FMLA leave?

---

[10] Plaintiff sent his first email to Howard and stated, "I will request leave under FMLA. If you can assist me in any way with the process, it would be appreciated." (ECF No. 18-3 at PageID 160.) His second email, which stated, "I would like to request FMLA leave as well as any information on the process and requirements," went to Harless. (ECF No. 18-3 at PageID 162.) And Plaintiff's third email to Nering asked if there was "any additional information that [she] could share regarding the FMLA request and process." (ECF No. 18-3 at PageID 164.)

[11] The Court is somewhat concerned about the testimony related to this issue. On the one hand, Plaintiff states that he told Howard his FMLA leave would be to care for M and that the school generally knew about M's condition. (ECF No. 18-3 at PageID 126, 128–29.) But on the other, he cannot clearly state when or how he had this conversation or any details of it. (*See* ECF No. 18-3 at PageID 128–31; ECF No. 20-1 at PageID 328.) Even so, viewing the testimony along with the other evidence, and "in the light most favorable to" Plaintiff, a reasonable jury could find Plaintiff gave Howard enough information about M's care to meet the notice requirement and trigger FPA's responsibilities under the regulations. *See Render*, 53 F.4th at 913–14; 29 C.F.R. § 825.301(a).

FPA may deny that Plaintiff told Howard why he needed leave or why FPA provided the notice

form, but these are fact questions about notice that a jury—and not this Court—must decide.

Taking this evidence—the emails, testimony, and FPA's responses to Plaintiff—as a

whole, and viewing it in the light most favorable to Plaintiff, there is a question of fact as to

whether Plaintiff gave proper notice under 29 C.F.R. § 825.301. *See Render*, 53 F.4th at 913–14.

For this reason, summary judgment is inappropriate here. *See* Fed. R. Civ. P. 56.

### 2.    Retaliation

Plaintiff also alleges FMLA retaliation against FPA. Under the retaliation theory of

§ 2615(a)(2), an employer violates the FMLA by "discharg[ing] or in any other manner

discriminat[ing] against any individual for opposing any practice made unlawful by this title."

29 U.S.C. § 2615(a)(2). A plaintiff alleging FMLA retaliation must show that (1) he engaged in

an FMLA-protected activity, (2) the employer knew he was exercising his FMLA rights, (3) the

employer then took adverse employment action against the plaintiff, and (4) "there was a causal

connection between the protected FMLA activity and the adverse employment action." *Render*,

53 F.4th at 920 (quoting *Redlin v. Grosse Pointe Public Sch. Sys.*, 921 F.3d 599, 616 (6th Cir.

2019)). The Court now addresses these elements, beginning with the first two.

### a.    Protected Activity and Knowledge of Exercise

FPA argues that Plaintiff failed to give proper notice to take FMLA leave under the

statute and regulations. (*See generally* ECF No. 18-1.) And this argument could go either to the

first or the second element of the prima facie case. After all, the lack of notice could mean that

Plaintiff failed to engage in a protected activity or that FPA was unaware that he was engaging in

that activity. But this distinction is not critical to this analysis. (ECF No. 18-1 at PageID 55–

57.) *See also Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 872 (6th Cir. 2023) (explaining

13

that it was "entirely unclear whether the Firm contends that the notice deficiency" caused the
plaintiff's claims to fail under the first or second element but analyzing the two together);
*Render*, 53 F.4th 905 (analyzing the first and second elements together); *Demyanovich*, 747 F.3d
at 433 ("By asking . . . for FMLA leave, [the employee] both engaged in protected activity and
made his employer aware of it.").

As discussed above, a plaintiff engages in a protected activity by asking about and
requesting FMLA leave. *See Milman*, 58 F.4th at 869–871 (explaining that inquiring about and
requesting leave, even when not qualified for it, is protected); *Render*, 53 F.4th at 920
("Employers are charged with knowing about FMLA protected activity as soon as an employee
requests leave, even if it turns out the employee was not entitled to benefits. It is the *request* that
is protected activity."); *Demyanovich*, 747 F.3d at 433 ("By asking . . . for FMLA leave, [the
employee] both engaged in protected activity and made his employer aware of it."). And
Plaintiff asked about FMLA when he emailed Howard, Harless, and Nering; explained that he
wanted to take FMLA leave; and asked for information about how to do it. (ECF No. 18-3 at
PageID 160 ("I will request leave under FMLA. If you can assist me in any way with the
process, it would be appreciated."); ECF No. 18-3 at PageID 162 ("I would like to request
FMLA leave as well as any information on the process and requirements."); ECF No. 18-3 at
PageID 164 (asking if there was "any additional information that [Nering] could share regarding
the FMLA request and process").)

As noted above, there are factual disputes over whether FPA "knew that [Plaintiff] was
exercising"—or at least inquiring about how to exercise—"[his] rights under the FMLA."
*Render*, 53 F.4th at 920 (citation omitted); *see Milman*, 58 F.4th at 869–871 (explaining that
inquiring about and requesting leave, even when not qualified for it, is protected); *Demyanovich*,

14

747 F.3d at 433. And because these disputes of fact remain, the Court must deny summary

judgment. *See* Fed. R. Civ. P. 56.

### b.    Adverse Employment Action

To satisfy the third element of a prima facie case of retaliation, a plaintiff must show that,

after learning about protected activity, the employer took an adverse employment action against

the employee. *Render*, 53 F.4th at 920 (citation omitted). This includes terminating the

employee. *See Chapman v. Brentlinger Enters.*, 124 F.4th 382, 402 (6th Cir. 2024) ("[F]iring

[plaintiff] was an 'adverse action.'"). FPA arguably first learned about Plaintiff's protected

FMLA activity on January 26, 2022, when he emailed Howard and asked for more information

about how to take leave under the FMLA. (*See* ECF No. 18-3 at PageID 160.) And FPA fired

him about a week later. (ECF No. 18-3 at PageID 105–06, 121–22.) The third element is

therefore met.

### c.    Causation

The Parties turn to the fourth and final element: causation. For purposes of FMLA

retaliation, a plaintiff must show the protected FMLA activity[12] was a causal factor[13] in the

defendant's decision to treat the plaintiff adversely. *See Render*, 53 F.4th at 920 (requiring a

"causal connection"). And at the prima facie stage, to show causation, a plaintiff can rely solely

---

[12] As explained above, there are questions as to whether Plaintiff engaged in protected activity,
which turns on the fact issues related to notice. For purposes of this stage of the *McDonnell
Douglas* analysis, the Court assumes that Plaintiff engaged in protected activity.

[13] The proper causation standard for FMLA claims is unclear. *See Hunter v. Valley View Local
Sch.*, 579 F.3d 688, 690–91 (6th Cir. 2009) (quoting 29 C.F.R. § 825.220(c) ("[E]mployers
cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring,
promotions or disciplinary actions . . . .")); *Sharp v. Profitt*, 674 F. App'x 440, 451 (6th Cir.
2016) (noting, without deciding, that "[i]t is likely that causation in [an FMLA] analysis means
actual or 'but-for' causation"). Because Plaintiff has shown enough to survive a motion for
summary judgment under either standard, the Court does not decide this issue now.

on how close in time the employer's adverse action was to the protected activity.  *Render*, 53 F.4th at 921 (noting that "the causal connection . . . can be established solely on the basis of close temporal proximity" and considering a three-month window to be close enough (citation omitted)).

FPA's human resources director, Ms. Nering, recommended that Ms. Howard fire Plaintiff only two days after his FMLA emails and before answering any of Plaintiff's questions about FMLA.  (ECF No. 18-4 at PageID 174.)  And Ms. Howard then terminated Plaintiff only a few days later.  (ECF No. 18-3 at PageID 105–06, 121–22.)  These events occurred much closer in time than the three-month time frame in *Render*.  *See Render*, 53 F.4th at 921.  So the Court finds that the events here are close enough in time to show a causal connection between Plaintiff's FMLA inquiries and termination.  *See Render*, 53 F.4th at 921.

### B.    Non-Discriminatory Reason

Because Plaintiff has made a prima facie showing of interference and retaliation, the burden shifts back to FPA to show it had a nondiscriminatory reason for firing Plaintiff.  *See Render*, 53 F.4th at 919; *McDonnell Douglas*, 411 U.S. 792, 802 (1973).  Defendant claims it fired Plaintiff for his non-protected absences, such as missing work for his mental health, after a car accident, to take care of E when she got Covid, and to stay home when he was sick.  (*See* ECF No. 18-3 at PageID 128–31 (Plaintiff clarifying that the basis of his FMLA request was to care for M).)  And terminating employees for absences "is a sufficient nondiscriminatory reason to meet [Defendant's] burden."  *Render*, 53 F.4th at 921 (finding the defendant carried its burden by citing to unexcused absences).

16

C.    Pretext

When an employer provides a legitimate, non-discriminatory reason for the termination, the burden returns to the plaintiff to show that the employer's reasons are pretextual.  A plaintiff can show pretext by showing the reasons "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action."  *Demyanovich*, 747 F.3d at 431 (quoting *Seeger v. Cincinnati Bell Tel. Co*., 681 F.3d 274, 285 (6th Cir. 2012)).

As discussed above, Plaintiff claims that the timing between his request for FMLA and his termination provides evidence of retaliation.[14]  He adds that Howard's comment about "need[ing] someone who was going to be available to be at work" shows that his FMLA emails—and the potential FMLA leave that Plaintiff may have taken—were the real motivation for his termination.  (ECF No. 18-3 at PageID 105–06.)  This is all the more convincing because FPA never disciplined Plaintiff for his absences, even though it has a disciplinary policy.  (ECF No. 19-3 at PageID 284–88, 290–93.)  At minimum, the timeline, Howard's comment, and Plaintiff's leave history present a fact question as to Defendant's true motive and whether the FMLA request caused his termination.  After all, a reasonable jury could believe that Howard's comment had nothing to do with his FMLA request and was based instead on his non-FMLA absences.  (*See* ECF No. 18-3 at PageID 128–31 (Plaintiff explaining that his FMLA request related to caring for M).)  But it could also find Defendant fired Plaintiff because his FMLA

---

[14] Defendant correctly points out that temporal proximity alone is not enough for Plaintiff to carry his burden at this stage of the analysis.  *See Skrjanc v. Great Lakes Power Serv. Co*., 272 F.3d 309, 317 (6th Cir. 2001) ("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual.").  (*See* ECF No. 18-1 at PageID 58.)  But, as the Court now discusses, Plaintiff does not rely on this timeline alone.

leave would increase his days off.  (*See* ECF No. 18-3 at PageID 105–06; ECF No. 19-3 at PageID 284–88, 290–93.)

As a result, under the *McDonnell Douglas* framework, Plaintiff has shown that there is a question of material fact as to the motive behind Defendant's decision to fire him.  And this question of fact makes summary judgment improper.  *See* Fed. R. Civ. P. 56.  The Court therefore **DENIES** Defendant's motion for summary judgment on Plaintiff's FMLA claims.

## II.    ADA and Rehabilitation Act Claims

Plaintiff also brings claims for associational discrimination under the ADA and the Rehabilitation Act.  (ECF No. 1 at PageID 5–7.)  *See* 42 U.S.C. § 12112(b)(4) (ADA's associational disability discrimination provision); 29 U.S.C. § 794 (Rehabilitation Act's prohibition on disability discrimination by "any program or activity receiving Federal financial assistance").  And Defendant moves for summary judgment, arguing that Plaintiff failed to exhaust administrative remedies and that the claims are time-barred.[15]  (ECF No. 18-1 at PageID 59–60.)  The Court addresses these arguments and explains why it will grant the motion for summary judgment for Defendant.

### A.    Administrative Remedies

Defendant argues that Plaintiff's Rehabilitation Act and ADA claims fail because he did not exhaust administrative remedies.  First, FPA argues that, because Plaintiff's EEOC charge "makes no mention whatsoever of the Rehabilitation Act," he has failed to exhaust his Rehabilitation Act claim.[16]  (ECF No. 18-1 at PageID 59.)  But a plaintiff need not expressly

---

[15] Defendant also argues that Plaintiff has failed to state a claim.  (ECF No. 18-1 at PageID 60–62.)  Because the Court finds the claims are barred, it does not address the merits of these arguments.

[16] It is somewhat unclear whether exhaustion is a prerequisite for Rehabilitation Act claims like Plaintiff's.  *Cf. Smith v. U.S. Postal Serv.*, 742 F.2d 257 (6th Cir. 1984) (requiring employees of

mention the Rehabilitation Act in an EEOC charge to preserve judicial review of such a claim. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 402 (6th Cir. 2008). Rather, a plaintiff may bring a claim if it is "reasonably expected to grow out of the charge of discrimination" that was before the EEOC. *Id.* And Plaintiff's Rehabilitation Act claim here is so much like his ADA claim that it "grow[s] out of the [ADA] charge of discrimination" brought in the EEOC charge. For example, Plaintiff's EEOC charge states, "I believe I have been subjected to disparate treatment and retaliated against based on my association with an individual with a disability in violation of the [ADA]." (ECF No. 19-16 at PageID 316.) And the ADA and Rehabilitation Act claims before the Court both allege associational disability discrimination based on these same facts. (*See generally* ECF No. 1.) As a result, Plaintiff properly exhausted his Rehabilitation Act claim.

Second, FPA contends that Plaintiff cannot bring any discrimination claims under the ADA or Rehabilitation Act that relate to "his own medical condition."[17] (ECF No. 18-1 at PageID 59.) As stated above, a plaintiff exhausts administrative remedies for claims "reasonably expected to grow out of the charge of discrimination" presented to the EEOC. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 402 (6th Cir. 2008). Plaintiff's EEOC charge here relates

---

federal employers to exhaust remedies in the same way required under Title VII); *G.S. v. Lee*, 558 F. Supp. 3d 601 (W.D. Tenn. 2021) (not requiring exhaustion for ADA and Rehabilitation Act cases in an educational setting); *Tuck v. HCA Health Servs.*, 842 F. Supp. 988, 991 (M.D. Tenn. 1992) ("In the context of private employers and private companies, however, there is no exhaustion requirement."). In any case, because Plaintiff would have exhausted his remedies anyway, the Court does not address this issue.

[17] It does not appear Plaintiff brings claims based on his own health. (*See* ECF No. 1 at PageID 6–7.) And to the extent that he has tried to do so, he does not argue that they should survive dismissal. (*See* ECF No. 19 at PageID 194 (arguing that an explicit reference to the Rehabilitation Act is not required but not clarifying whether his claims relate to his or his daughter's disability).) Still, the Court analyzes the potential claims as Defendant interprets them.

only to associational disability discrimination.  (*See* ECF No. 19-16.)  He does not mention any personal health concerns or disabilities, and he does not claim that his own conditions motivated FPA's decision to fire him.  (*Id.*)  As a result, the EEOC would not "reasonably expect[]" a disability discrimination claim based on his medical condition—and not the one mentioned in the charge—to somehow "grow out of the charge of" associational discrimination for M's disability. *See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 402 (6th Cir. 2008).  Plaintiff therefore has not exhausted remedies for any direct disability discrimination claim based on his physical or mental health conditions.

In sum, Plaintiff exhausted the administrative remedies for his associational disability discrimination claims under the Rehabilitation Act.  But if, or to the extent, Plaintiff asserts discrimination claims based on his own medical conditions, those are subject to dismissal for failure to exhaust.

### B.    Time Bar

Defendant also argues that Plaintiff's ADA and Rehabilitation Act claims are time-barred under the 300-day EEOC clock.  (ECF No. 18-1 at PageID 60.)  But Plaintiff argues that both claims are subject to a four-year limitations period instead.  (ECF No. 19 at PageID 195–96.)  The Court will address each Act's limitations period.

#### 1.    ADA

The ADA expressly adopts the "procedures, limitations period, and remedies" of Title VII.  *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 520 (6th Cir. 2021) (quoting 42 U.S.C. § 12117(a)).  This means that a party alleging disability discrimination under the ADA has 300

20

days[18] to first bring a charge before the EEOC. *Id.* (citing 42 U.S.C. § 2000e-5(e)). The EEOC

then exercises exclusive jurisdiction over the case for 180 days before issuing a right to sue

letter, which allows the plaintiff to bring suit in court within 90 days. *Id.* (citing 42 U.S.C.

§ 2000e-5(f)(1)). If a plaintiff fails to comply with either of these time limits, the claim is

untimely. *Valentine v. Conrad*, 899 F.3d 428, 433 (6th Cir. 2018) (explaining that "[a] claimant

under the Americans with Disabilities Act must file her charge with the Commission" within the

proper time).

And Plaintiff here filed an EEOC charge 314 days after his allegedly-discriminatory

termination—which is two weeks late. (*See* ECF No. 18-8 at PageID 186 (EEOC charge dated

"12/12/2022"; marked received on December 13, 2022; and alleging he "was terminated on

February 2, 2022").) As a result, the EEOC dismissed the charge because it "was not filed

within the time limits under the law." (ECF No. 1-1 at PageID 9.) And so, having failed to

properly bring the charge before the EEOC, the Court finds the action is time-barred. *See*

*Valentine v. Conrad*, 899 F.3d 428, 433 (6th Cir. 2018) (quoting 42 U.S.C. § 2000e-5(e)(1))

(requiring timely EEOC exhaustion).

---

[18] Under the ADA, a plaintiff has 180 days from the "alleged unlawful employment practice" to
file a charge with the EEOC. *Valentine v. Conrad*, 899 F.3d 428, 433 (6th Cir. 2018) (quoting
42 U.S.C. § 2000e-5(e)(1)). "But in a 'deferral state'—one that has a 'law prohibiting the
unlawful employment practice alleged and establishing or authorizing a State or local authority
to grant or seek relief from such practice'—she also must exhaust her claim by filing it with the
state or local agency." *Id.* (quoting 42 U.S.C. § 2000e-5(c)). And this state filing extends the
time to file with the EEOC to 300 days. *Id.* (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Amini v.
Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001) (noting there is "a dual statute of limitations" of
180 or 300 days, depending on the state). Tennessee is a deferral state, *see id.* (citing Tenn.
Code Ann. § 8-50-103(b)), so, assuming he filed with the state agency, Plaintiff had 300 days to
file with the EEOC.

### 2.    Rehabilitation Act

The Rehabilitation Act claim, however, is less straight-forward.  Unlike the ADA, the

Rehabilitation Act does not have its own statute of limitations.  In such cases, courts apply one of

two limitations periods.  For claims existing before 1990, federal courts borrow the state statute

of limitations for the most similar state cause of action.  *McCormick v. Miami Univ.*, 693 F.3d

654, 662 (6th Cir. 2012) (citing *North Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995)).  But for

actions created through post-1990 enactments or amendments, a four-year limitations period

applies.  *Id.* (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)); 28 U.S.C.

§ 1658 ("Except as otherwise provided by law, a civil action arising under an Act of Congress

enacted after the date of the enactment of this section may not be commenced later than 4 years

after the cause of action accrues.").

The Rehabilitation Act was enacted in 1973, but Plaintiff argues that his claim is a fruit

of the 1992 and 2008 amendments to the Rehabilitation Act.[19]  (*See* ECF No. 19 at PageID 195–

96.)  If he is right, the Rehabilitation Act claim would be subject to, and timely under, the federal

catch-all limitations period of four years.  But if he is not, Tennessee's one-year personal injury

statute of limitations applies instead[20] and bars his claim.

---

[19] The 1992 amendments are to the Rehabilitation Act itself whereas the 2008 amendments that
Plaintiff cites apply to the ADA.  (ECF No. 19 at PageID 195.)  Even so, because the
Rehabilitation Act expressly incorporates the ADA, the ADA amendments are also relevant to
the rights existing under the Rehabilitation Act.
　　To the extent that Plaintiff suggests these amendments subject the ADA to a four-year
limitations period, the Court disagrees. The ADA has its own statutes of limitations at 180 or 300
days, *see* 42 U.S.C. §§ 12117(a), 2000e-5(e), so the ADA does not rely on 28 U.S.C. § 1658 to
give it one.
[20] In the Sixth Circuit, courts apply a state's personal injury statute of limitations to
discrimination claims under the Rehabilitation Act.  *See Tomei v. Parkwest Med. Ctr.*, 24 F.4th
508, 511 (6th Cir. 2022) ("If the Rehabilitation Act's borrowed statute of limitations applies—
here, Tennessee's one-year personal-injury statute of limitations—Tomei's suit is untimely.");
*McCormick v. Miami Univ.*, 693 F.3d 654, 663 (6th Cir. 2012) ("Here, McCormick's section 504

"[A] cause of action arises under an Act of Congress enacted after December 1, 1990—

and therefore is governed by § 1658's four-year statute of limitations—if the plaintiff's claim

against the defendant was made possible by a post-1990 enactment." *McCormick v. Miami*

*Univ.*, 693 F.3d 654, 663 (6th Cir. 2012) (quoting *Jones*, 541 U.S. at 382 (internal quotation

marks omitted)).  To be sure, the amendments to which Plaintiff cites "revised the definition of

'disability'" under the Rehabilitation Act (*see* ECF No. 19 at PageID 195), but they do not

automatically mean Plaintiff's claims "arise[] under" the amendments.  *See McCormick v. Miami*

*Univ.*, 693 F.3d 654, 663 (6th Cir. 2012) (rejecting the plaintiff's argument that the 1992

"expan[sion of] the meaning and the scope of the definition of 'individuals with disabilities'"

subjected her claim to the federal four-year limitations period (rather than Ohio's two-year

personal injury statute)).  In fact, Plaintiff "does not explain how the amendments created a cause

of action previously unavailable to [him]." *Id.*  And the Court would have trouble finding that

the amendments did so.  If anything, the ADA has prohibited associational disability

discrimination since its enactment in July 1990.  *See* 42 U.S.C. § 12112(a), (b)(4) (prohibiting

"excluding or otherwise denying equal jobs or benefits to a qualified individual because of the

known disability of an individual with whom the qualified individual is known to have a

relationship or association"); *see also* Americans with Disabilities Act of 1990, July 26, 1990,

P.L. 101–336, 104 Stat. 327.

---

claim is subject to the two-year limitations period established in Ohio Revised Code § 2305.10"
for personal injury); *Southerland v. Hardaway Mgmt. Co.*, 41 F.3d 250, 254–55 (6th Cir. 1994)
(explaining why Kentucky's personal injury statute of limitations applied to the plaintiff's
Rehabilitation Act claims).  And though those cases had to do with students suing educational
facilities for discrimination in receiving education, the Court has no reason to believe it does not
apply to employees suing educational institutions as employers.  *See Martin v. Univ. of Tenn.*,
No. 3:24-cv-75-KAC-JEM, 2025 WL 790936, at *2 (E.D. Tenn. March 12, 2025) (applying
Tennessee's one-year limitations period to a Rehabilitation Act claim by an employee).

Simply put, Plaintiff has not shown—and likely cannot show—that his Rehabilitation Act claim "arises under" a post-1990 Act of Congress. As a result, Tennessee's one-year personal injury statute of limitations applies to Plaintiff's claim. And because the allegedly discriminatory termination of which he complains took place on February 2, 2022, he had through February 2, 2023, to sue. But he did not file suit until December 21, 2023, which is well outside the statutory period. Plaintiff's Rehabilitation Act claims are therefore barred.

## <u>CONCLUSION</u>

For the reasons discussed above, there are genuine disputes of material fact as to Plaintiff's FMLA claims, so the Court **DENIES** FPA's motion to dismiss them. But Plaintiff's ADA and Rehabilitation Act claims are time-barred. As a result, the Court **GRANTS** summary judgment for FPA on Plaintiff's associational discrimination claims.

**SO ORDERED**, this 12th day of June, 2025.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

24